FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

NOV 28 2005

at 4 o'clock and 45 min P M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANTHONY REGAN, ) | Civ. No. 04-00731 SOM-LEK |
| Plaintiff, ) | AMENDED ORDER DISMISSING THIRD AMENDED COMPLAINT AND DISMISSING DEFENDANT CLAYTON FRANK |
| vs. ) | |
| CLAYTON FRANK, et al., ) | |
| Defendants. ) | |

**AMENDED ORDER DISMISSING THIRD AMENDED COMPLAINT
AND DISMISSING DEFENDANT CLAYTON FRANK**

Plaintiff Anthony Regan, a prisoner proceeding *pro se*, filed this civil rights action on December 15, 2004. Before the court is Defendant Clayton Frank's Motion to Dismiss ("Motion") Regan's Third Amended Complaint ("TAC"). Regan filed an Opposition to the Motion on October 12, 2005.

Pursuant to Local Rule 7.2(d), the court finds this matter suitable for disposition without a hearing. The court GRANTS Frank's Motion based on Regan's failure to exhaust prison administrative remedies. As Frank is the only named Defendant remaining in the case, the court dismisses the entire action. As an alternative ruling, the court dismisses Frank based on Regan's failure to state a cognizable claim against him and based on qualified immunity. Having dismissed the TAC without prejudice in its entirety, and having dismissed Frank from the action, the court declines to address the remaining arguments in the Motion.

**BACKGROUND**

The facts underpinning Regan's action have been set forth in the court's previous orders and need not be recounted again. There are twenty-one remaining allegations in the TAC. Regan alleges that he was: (Count 1) denied psychiatric care and medication from September 24, 2001, through October 19, 2001; (Count 2) denied religious material from September 24, 2001, through October 19, 2001, from April 2, 2002, through October 4, 2002, and from December 7, 2003, through February 9, 2004; (Count 3) denied books from September 24, 2001, through October 19, 2001, from April 2, 2002, through October 4, 2002, and from December 7, 2003, through February 9, 2004; (Count 4) denied adequate medical care on October 4, 2002; (Count 5) assaulted by two prison guards between September 24, 2001, and October 19, 2001; (Count 6) denied timely delivery of his mail from December 7, 2003, through February 9, 2004; (Count 7) transferred to therapeutic lockdown without due process from April 2, 2002, through October 4, 2002; (Count 8) assaulted on two occasions by other inmates between April 2, 2002, and October 4, 2002, and between December 7, 2003, and February 9, 2004; (Count 9) in fear during his entire incarceration; (Count 10) given inadequate food from September 21, 2001, through October 19, 2001, from April 2, 2002, through October 4, 2002, and from December 7, 2003, through February 9, 2004; (Count 11) subjected to cold showers from

September 24, 2001, through October 19, 2001, and from December 7, 2003, through February 9, 2004; (Count 12) deprived of clean clothes and bedding from September 24, 2001, through October 19, 2001; (Count 13) subjected to excessive noise from September 24, 2001, through October 19, 2001, and from December 7, 2003, through February 9, 2004; (Count 14) exposed to smoke and insecticides from September 21, 2001, through October 19, 2001, from April 2, 2002, through October 4, 2002, and from December 7, 2003, through February 9, 2004; (Count 15) put in a freezing suicide cell for three to five days between April 2, 2002, and October 4, 2002; (Count 16) given inadequate medical care from December 7, 2003, through February 9, 2004, and inadequate dental care on October 4, 2002; (Count 17) denied exercise and recreation from April 2, 2002, through October 4, 2002, and from December 7, 2003, through February 9, 2004; (Count 18) deprived of his personal property; (Count 19) denied access to the court during an unspecified time; (Count 20) held five to twelve days beyond his release date after an unspecified period of his incarceration; and (Count 21) denied due process at an unspecified time.

    Regan names Clayton Frank in his individual capacity and several Doe Defendants to this action. Frank was the warden at Oahu Community Correctional Center ("OCCC") during Regan's incarceration there.

## LEGAL STANDARD

Exhaustion is an affirmative defense that defendants have the burden of proving; it should be raised in an "unenumerated" Rule 12(b) motion to dismiss rather than in a motion for summary judgment. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). In deciding an unenumerated Rule 12(b) motion to dismiss for failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact. Id. at 1119-20. If the court looks beyond the pleadings in deciding an unenumerated motion to dismiss for failure to exhaust, the court must give the prisoner fair notice of his opportunity to develop a record. Wyatt, 315 F.3d at 1120 n.14.[1] If the court concludes that the prisoner has not exhausted Hawaii's prison administrative process, the proper remedy is dismissal of the unexhausted claim or claims. Id. at 1120.

---

[1] Regan was given such notice by Frank's Notice of Hearing attached to the Motion and by this court's previous orders discussing his apparent failure to exhaust. See e.g., Order Granting Motion for Reconsideration at 6 (Sept. 9, 2005). Regan's Opposition to the Motion establishes his receipt of that notice.

## DISCUSSION

Frank argues that Regan's TAC and action should be dismissed for Regan's failure to exhaust his claims. Frank also asserts that many of Regan's claims are time-barred by the applicable statute of limitation and that Regan's medical claims in Counts 1 and 16 are barred by Hawaii Revised Statute § 671-16. Finally, Frank argues that Regan has failed to allege or show Frank's personal involvement in any of the matters Regan alleges and that Frank is entitled to qualified immunity with respect to Regan's claims against him.

I. Regan has Failed to Exhaust his Administrative Remedies.

The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Although the district court at one time had discretion to permit a case to proceed without exhaustion, exhaustion in prisoner cases covered by § 1997e(a) is now mandatory. See Porter v. Nussle, 534 U.S. 516 (2002). All available remedies must be exhausted; those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" Id. (citation omitted). Even when the prisoner

seeks relief unavailable in grievance proceedings, such as money damages, exhaustion is still a prerequisite to bringing suit. Id.; Booth v. Churner, 532 U.S. 731, 741 (2001). Exhaustion is a prerequisite to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Porter, 534 U.S. at 532; see also McKinney v. Carey, 311 F.3d 1198, 1199-00 (9th Cir. 2002) (per curiam) (requiring prisoners to exhaust prison grievance procedure before, not after, filing suit in federal court).

Hawaii prisoners may administratively exhaust their complaints and grievances pursuant to the Department of Public Safety's ("DPS") Policies and Procedures Manual (1992), section 493.12.03(4.0). These rules establish a three-step process for exhausting an administrative appeal. The inmate must submit a grievance at each step and wait either for a response to that grievance or for the time for receiving a response to expire. Only then may the prisoner move to the next step. DPS Manual § 493.12.03.13-.15. Inmates may also file emergency, or privileged, grievances, with differing time limits and procedures, if a matter is "of a sensitive nature, and there exists a reasonable belief that punitive measures will be taken at the hands of facility staff or other inmate, or would

6

otherwise be adversely affected if it is known at the facility that the complaint/grievance is being filed." Id. § 493.12.03.10.

Frank argues that Regan's action should be dismissed without prejudice because Regan did not fully exhaust available administrative remedies under § 1997e(a) as to any of his claims. In support, Frank provides a declaration from OCCC's Grievance Coordinator, James Kanehira, and copies of all of the grievances that Regan filed while at OCCC. Kanehira states that he has reviewed Regan's grievance records during all periods that Regan was incarcerated at OCCC and has found ten grievances that Regan submitted during that time. These ten grievances, submitted between May 30, 2002, and January 19, 2004, cover some, but not all, of the allegations in the TAC. In summary, the grievances are:

5/30/02   **Grievance No. 82196:** Regan complained that he was not allowed to use the phone during his scheduled phone time.
**Response:** Regan was informed that he must sign up for phone time. Regan did not appeal.

6/19/02   **Grievance No. 82219:** Regan complained that he was unable to get Buddhist religious materials.
**Response:** Regan was reminded that the prison chaplain had given him a book on Buddhism and had attempted to find more materials for Regan. Regan was informed that the chaplain would continue to look for materials responsive to Regan's specific requests and that he should be patient. Regan did not appeal.

7

7/11/02    **Grievance No. 83905:** Regan complained that he was unable to make legal calls because he was "related to my lawyer who is advising me on two cases."
**Response:** Regan was informed that he was only allowed to call his attorney of record, and that he could contact other attorneys via mail. Regan appealed this decision to Step 2 and was notified that the prison had determined that he was attempting to call his mother, who acknowledged that she was not an attorney. Regan was told that if he provided documentation showing that his mother was representing him, or acting on his legal behalf, the prison would then determine whether his requested calls to her were legal or personal. Regan did not pursue this grievance to Step 3.

8/03/02    **Grievance No. 83912:** Regan complained that a prison guard had yelled at him to be quiet.
**Response:** Regan was informed that, after inquiry, the prison had determined that Regan had been told several times to stop being disruptive, and that he appeared to be having difficulty adhering to the guards' instructions. Regan submitted, then withdrew, a Step 2 appeal of this grievance.

8/22/02    **Grievance No. 83582:** Regan complained that he was being charged for medical services that he had not requested.
**Response:** Regan was told that DPS policies require that inmates be charged for self-inflicted injuries, injuries due to "altercation[s]," and accidental injuries. There is no record of a Step 2 appeal of this grievance; Regan appears to have proceeded directly to Step 3. In response to his Step 3 appeal, the prison informed Regan that he had to provide a copy of his ledger so that the prison could perform an audit of his charges.

9/1/02    **Grievance No. 84172:** Regan complained of cockroaches in his cell.
**Response:** Regan was informed that the exterminators visited the prison once per month and that they had already been called. Regan was also told that the exterminators were only contracted to spray the kitchen area and the control station. Regan did not appeal.

9/6/02      **Grievance No. 84175:** Regan complained that he was being charged for a store order that he had not received.
            **Response:** Regan's account was credited the amount in question. Regan did not appeal.

9/23/02     **Grievance No. 83922:** Regan complained that a prison guard threatened to beat any inmate who filed a grievance against Sergeant Anderson, another prison guard. Regan believed this threat was directed at him.
            **Response:** Regan was told that, if his complaint was found to have merit, appropriate action would be taken against the prison staff named. Regan did not appeal.

12/09/03    **Grievance No. 101674:** Regan again complained that he could not get religious materials.
            **Response:** Regan was told that, as he had been informed by the prison chaplain, all religious resources were donated by the community and that the chaplain would continue searching for donated materials of interest to Regan. Regan was informed that he should assist the chaplain by directing him to Regan's religious affiliates for possible donations. Regan was also told that he could purchase religious literature and was told how to do so. Regan did not appeal.

1/19/04     **Grievance No. 101718:** Regan stated that he "was trying to get another extension on my property or to get it sent home."
            **Response:** Regan was told that this was not a proper subject for a grievance, as it was not a complaint. He was informed that, if he needed another thirty-day extension, he had to inquire with his Case Manager. Regan did not appeal this grievance.

Kanehira states that a copy of the grievance guidelines is posted in each module at OCCC and that complaint/grievance forms are available from any staff member. Kanehira further states that these procedures were in place during all periods of Regan's incarceration at OCCC, that grievance forms were readily

9

available during those periods, and that other inmates submitted grievances during the times at issue. Frank argues that, at a minimum, Regan was aware of the grievance process as of May 2002, when Regan filed his first grievance, and that Regan has clearly failed to fully grieve any of the claims within the TAC since that time, or before he filed this federal action.

In his Opposition, Regan argues that he does not know if he was ever informed by OCCC staff that an inmate must exhaust the grievance process before filing suit in federal court, and that he believes that prison officials "actively conceal this fact from inmates." (Opp. 4). Regan claims that the PLRA's exhaustion requirement is used by prison officials "as an immunity card that is kept secret." (Id. 19). He also says that, since August 11, 2005, Frank has instructed the law library to deny his requests for information on the PLRA, while he argues for approximately fifteen pages about the inequities of the PLRA, and cites to caselaw on how courts have addressed the PLRA's exhaustion requirement. (See Opp. 10, see generally 6-21.) Although the prison must give inmates information on how to properly file a grievance and must provide access to a law library or legal assistance, there is no authority requiring a prison to inform inmates of the exhaustion requirements of the PLRA or to tell them that, once they have completed the prison grievance process for a specific complaint, they must file suit

in the federal court on that exhausted claim within the applicable state statute of limitation period.

Regan claims that he has "exhausted 'remedies' on many of the same issues [as presented in the TAC]" since he has been incarcerated at Halawa Correctional Facility. (Opp. 13). He does not provide copies of those exhausted grievances, or explain how or why he exhausted claims against OCCC officials while he was at Halawa, but suggests that the court and the parties look at these grievances.

Regan argues that he never saw the posted grievance procedures in the module and disputes that they are, in fact, posted now or were posted when he was incarcerated at OCCC. Regan also disputes that grievance forms were readily available and argues that Defendants have not provided the names and housing assignments of the other inmates that allegedly filed grievances during the relevant time periods. While this may be a disputed issue, it is, nonetheless, clear from the record before the court that Regan was fully aware of the grievance system at OCCC no later than May 30, 2002, and was also aware of how to appeal his grievances.

Regan also disputes Kanehira's declaration that Regan only filed ten grievances while at OCCC, stating that he is certain that he filed many more. While Regan does not provide copies of the other grievances that he alleges he filed, he does

11

say that, since he has been incarcerated at Halawa Correctional Facility for the past year and eight months, he has filed at least 300 grievances. The numerous grievances that Regan has filed at Halawa do not support his claim that he filed more grievances at OCCC than are present in OCCC's files.

Regan argues that he was not required to exhaust claims that are time-barred by the prison grievance procedure's time limits. Regan is incorrect, as an "inmate must still submit his untimely grievance to the prison and appeal all denials of his claims completely through the prison's administrative process to satisfy the PLRA's exhaustion requirement." Ngo v. Woodford, 403 F.3d 620, 629 (9th Cir. 2005). He also relies on cases that he believes support his contention that he is not required to exhaust claims that seek monetary damages or claims that allege Eighth Amendment abuses. Regan is, again, incorrect. As detailed above, he is required to exhaust all of his claims before bringing them in federal court, no matter what type of relief he seeks or what his claim involves. See Porter, 534 U.S. at 532; Booth, 532 U.S. at 741; McKinney, 311 F.3d at 1199-00.

Regan also states that it is possible that he did not exhaust his remedies in fear of retaliation from prison officials or guards, and that he was sometimes misled by prison staff into not filing grievances or appeals. He does not explain why, once he was obviously aware of the grievance process, he grieved some

12

claims and not others, or why, if he was afraid, he did not file a privileged grievance.

It is clear that Regan was aware of OCCC's grievance procedure no later than May 30, 2002, the date on which he filed his first grievance at OCCC. It is equally clear that Regan failed to exhaust any of the claims he alleges in the TAC. First, there are only two grievances that Regan arguably exhausted while at OCCC. In Grievance No. 83582, Regan complained that he was improperly charged for prison medical expenses. Regan bypassed Step 2 in this grievance and went directly to Step 3. Assuming for the purposes of this Motion that this grievance was properly exhausted, it is, nonetheless, unavailing to Regan, as the claim in this grievance is not presented in the TAC. In Grievance No. 84175, Regan claimed that money was deducted improperly from his account, and, in response, the prison credited his account with the disputed amount, thus resolving the claim. See Brown v. Valoff, 422 F.3d. 926, 935 (9th Cir. 2005) (inmate need not pursue further levels of review once he has received all available remedies at an intermediate level). Regan did not assert this claim in the TAC.

In addition, if the claims in the TAC and his claims in his grievances are liberally construed and compared, the only claims that appear to correlate with his grievances are the claim in Count 2 of the TAC, for the denial of religious materials

(correlating with his claims in Grievance Nos. 82219 and 101674), and possibly the claim in Count 19 of the TAC, that he was denied access to the court (correlating with his claims in Grievance No. 83905, in which Regan complained that he was not allowed to phone his lawyer). His purported lawyer was eventually determined to be his mother, who is not an attorney. None of these grievances was exhausted.[2]

Regan has failed to show that he has either exhausted any of the claims in his TAC or that his failure to exhaust should be excused. Frank's Motion to Dismiss is GRANTED for Regan's failure to exhaust his claims. The Third Amended Complaint and action are DISMISSED in their entirety without prejudice.

II.  Frank is Dismissed From this Action.

Frank also argues in the alternative that he should be dismissed from this action for Regan's failure to allege any cognizable claims against him. This court agrees.

A.  No Liability under § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and

---

[2] While Regan's claim in Count 14 of the TAC that he was exposed to harmful insecticides has insects in common with the claim in Grievance No. 84172 that there were cockroaches in his cell, a claim for exposure to harmful insecticides is materially different from a claim that there are cockroaches in a cell.

14

(2) that the alleged violation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

There is no respondeat superior liability under § 1983. Polk v. County of Dodson, 454 U.S. 312, 325 (1981); Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1185 (9th Cir. 2002). To state a civil rights claim against an individual defendant, a plaintiff must allege facts showing a defendant's "personal involvement" in the alleged constitutional deprivation or a "causal connection" between a defendant's wrongful conduct and the alleged constitutional deprivation. Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989).

A supervisor may be held liable in his individual capacity "for his own culpable action or inaction in the training, supervision or control of [his or her] subordinates." Watkins v. City of Oakland, Cal., 145 F.3d 1087, 1093 (9th Cir. 1998) (quoting Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991)). A supervisor is not liable for the constitutional violations of his subordinates unless "the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). A supervisor may also be held liable if he or she implemented "a

15

policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991)(en banc). However, an individual's "general responsibility for supervising the operations of a prison is insufficient to establish personal involvement." Ouzts v. Cummins, 825 F.2d 1276, 1277 (8th Cir. 1987).

In orders dismissing Regan's earlier complaints, this court warned Regan that his claims failed to present any facts or allegations tying Frank, in his position as OCCC warden, to the alleged violations in Regan's complaints, but allowed Regan to amend to show or allege that causal connection.[3] Although Regan has now amended his complaint several times, his only specific allegations against Frank in the TAC are that Frank "knew or should of knew of unconstitutional conditions of the prison . . . but failed to remedy this or take action to cure the problem." (TAC at 6R.) Regan's claims in the TAC, however, do not allege any facts suggesting that Frank actually knew of or participated in any alleged constitutional violations by his subordinates, or that Frank failed to prevent or terminate those alleged

---

[3] See, e.g., Order Dismissing Complaint, Denying Motions for Temporary Restraining Order and/or Preliminary Injunction, Denying Motion to Dispense With Security, and Granting Motion to Amend Complaint at 12-16, (Feb. 17, 2005) ("February 17 Order").

16

violations. Nor does Regan identify or even allege the presence of any prison policy that Frank implemented that is itself a repudiation of constitutional rights. Moreover, the record now before the court shows that, not only did Regan fail to fully exhaust his grievances at OCCC, but he also failed to grieve the claims in the TAC. Even if the record suggests that Frank was made aware of Regan's complaints, nothing ties Frank to Regan's claims. In short, as Regan was informed earlier, he has failed to state a claim against Frank in his individual capacity.[4]

B.  Qualified Immunity

Frank argues that he is entitled to qualified immunity with respect to Regan's claims. Frank is entitled to qualified immunity from suit in his individual capacity unless (1) the facts alleged, taken in the light most favorable to Regan, show that Frank's conduct violated a constitutional right, and (2) that right was clearly established at the time the alleged conduct occurred. See Saucier v. Katz, 533 U.S. 194, 201 (2001). The court need not reach the question of whether a right was

---

[4] The court is not imposing a heightened pleading requirement on Regan and has so informed him. See February 17 Order at 14. Regan's claims must be only as specific as required by the Federal Rules of Civil Procedure. See Galbraith v. County of Santa Clara, 307 F.3d 1119, 1125 (9th Cir. 2002). But Rule 8 does require a clear statement of Regan's claim against Frank. Regan simply names Frank in his individual capacity and says Frank knew or should have known of Regan's claims. Accepting Regan's allegations in the TAC as true, they do not make out a claim against Frank.

17

"clearly established" if the allegations do not make out the violation of a constitutional right in the first instance. Id.

Taking all allegations in the TAC as true, this court cannot make out any conduct by Frank himself that violated any constitutional right. Frank is therefore entitled to qualified immunity, and the Motion is GRANTED on this basis as well.

III. Defendant's Remaining Arguments

Frank argues that many of Regan's claims are time-barred by the statute of limitation and that his medical claims in Counts 1 and 16 are barred by Regan's failure to comply with Haw. Rev. Stat. § 671-16. As the court has dismissed the TAC without prejudice and has dismissed Frank from this action, effectively terminating this action, the court will not address these arguments except to note that, if Regan decides to exhaust his claims against OCCC and, upon exhaustion, to file another federal action reasserting those claims, these issues will again be in issue.

**CONCLUSION**

IT IS HEREBY ORDERED that:

1. Defendant's Motion to Dismiss is GRANTED based on Regan's failure to exhaust his administrative remedies prior to filing this action. The entire action is dismissed, without prejudice to the filing of a new action by Regan following exhaustion.

2.  Claims against Defendant Clayton Frank are DISMISSED without prejudice on the alternative grounds that Regan fails to state a claim against him and that Frank has qualified immunity.

3.  The Clerk is directed to TERMINATE this entire action without prejudice. A new judgment should be entered in place of the October 24, 2005, judgment, which is VACATED. The time in which Regan must appeal or take other post-judgment action begins to run anew from the filing of this new judgment.

DATED: Honolulu, Hawaii; November 28, 2005.

/s/ SUSAN OKI MOLLWAY
UNITED STATES DISTRICT JUDGE

REGAN v. OCCC, 04-731 SOM/LEK; AMENDED ORDER DISMISSING THIRD AMENDED COMPLAINT AND DISMISSING DEFENDANT CLAYTON FRANK; dmp\ ORDS 05\ Regan AMD'D ORD 12(b) dsm

19